Please the court. Drew Harris for the petitioner. In November 2017, the TEA commissioner learned that his recently hired special education director had just been sued because in her last job she allegedly covered up the sexual abuse of a six-year-old special education student. Commissioner Morath promptly fired the probationary employee from her high-profile position as the not before Lori Cash was able to make a whistleblower report about a minor software contract to the respondent here, the US Department of Education. Now this case goes beyond whistleblower law. This appeal is really about how easy is it to waive state sovereign immunity. That is the key issue here and there's clear precedent on it. Let me ask you about your claim of sovereign immunity. Are you claiming sovereign immunity only as to damages or also as to any other sort of relief? I don't I don't find anywhere that you specifically go beyond sovereign immunity as to damages. Well in this case we our argument is that a claim a private claim cannot be adjudicated against the state agency awarding damages or other relief. There are other ways to get around sovereign immunity such as ex parte young which are not applicable here but for purposes of the decision by the ALJ sovereign immunity prevents enforcement of that decision. It means that there's no jurisdiction. Where will we find in your pleadings or your briefing any discussion of sovereign immunity beyond immunity from from money damages? The argument that was made in our briefing before the ALJ was that sovereign immunity applies to the that the NDAA did not waive sovereign immunity and so therefore immunity applies with respect to any determinations regarding the NDAA. The applicable one here of course was damages. So I think that the key issue is whether or not there are express words that are unequivocal waiving sovereign immunity here and given that Dr. Cash's whistleblower claim fails for three reasons. First is that the NDAA statute itself does not on its face expressly and unequivocally waive state sovereign immunity and if this court agrees this court does not need to go any further. But can we look can we look to regulations as well as the statute? No an agency cannot unilaterally create a waiver of state sovereign immunity through regulation. Now assuming number two assuming that immunity was waived there's a procedural problem here. This whistleblower dispute should be should be decided in district court rather than by agency administrative action and that's because the agency did not act within its statutory 30-day period and just like the other cases like Itape this deadline had consequences. Cash had exhausted her administrative remedies and proceed to district court and the agency lost its jurisdiction to act because jurisdiction goes to the district court. Now the third reason is looking at the merits of this case. The ALJ committed error in evaluating the evidence. Among other various error the ALJ speculated as to privileged attorney communications and then outright cited those speculations as the basis for his decision. Now I want to start by focusing on the most important Supreme Court case regarding state sovereign immunity here and that is a Atascadero State Hospital. Atascadero concerned the original Rehabilitation Act which on its words applied to any recipient of federal assistance. Now the Supreme Court wrote in Atascadero that given their class of recipients of federal aid and the Supreme Court held that the statutory language in the original Rehabilitation Act was not an express and unequivocal waiver of state sovereign immunity. Now Congress knows how to craft statutory language that appropriately waives immunity. Congress amended the Rehabilitation Act after the Atascadero decision to include explicit waiver language and in fact it was the same express and unequivocal language that this court held to be a valid waiver in the Pace case. Now much like Atascadero here the respondent argues that Congress intended the NDAA to apply to all the states because the whistleblower statute simply applies to any grantee of federal money and so under the Department of Education's interpretation of the Atascadero Act any money from the federal government has unknowingly waived its sovereign immunity to private whistleblower claims. But just like Atascadero given their constitutional role states are not like any other grantee. This court should not create new precedent that deviates from Atascadero in suggesting otherwise. Now to put this argument another way the Department of Education's position is basically that the this court should infer a waiver of sovereign immunity when there's an ambiguity about what constitutes a grantee. A grantee is not defined in the statute and the Department of Education's position is to infer that that also included the states but of course there's lots of precedent that says waivers of immunity cannot be expressed that. Now there were only two federal courts to have addressed the issue of the NDAA waiving state sovereign immunity and those are SLAC and the Williams case and both of them used Atascadero as a starting point and concluded that the NDAA did not waive state sovereign immunity. Now I checked both of the status of those cases this morning the SLAC case was not appeal but the Williams case is currently on appeal before the Fourth Circuit. Briefing has been completed but no opinion has been issued in that case. So again this question about waiving state sovereign immunity it's now before two circuit courts and again I would urge you that to follow Atascadero as being the clear answer for that question. Now I do want to point out that the Department of Education has already conceded that the ALJ's basis for jurisdiction was immunity in the IDEA statute and the Department of Education has now abandoned that argument and argues that the NDAA language on its face when it says grantees that that is the result that creates a waiver of sovereign immunity. So turning to my second argument regarding the procedural issues the agency under the NDAA had 180 days to act or to investigate which could be happened here. So they had 360 days to investigate which they took and then they had 30 days to act or otherwise this matter could go to district court. And I want to give a quick timeline here which is on September 6, 2019 the OIG submitted its report to the Secretary of Education. Now in the briefing the Department of Education suggested this might be like a preliminary report but it was in fact the full report with all the attachments and in fact Secretary DeVos's letter or memo on Joint Appendix 1053 explicitly says that on September 6 she received the full report and all the all the attachments. Now that meant that 30 days after September 6 is when the agency had jurisdiction to act and so on October 6, 2019 30 days later their 30-day their jurisdiction expired. But what happened was that on October 7th the next day, let me ask you a question other under your argument what protection does a whistleblower have under the statute? So first of all the Texas Texas state has its own state whistleblower law and that it clearly and explicitly waived its sovereign immunity to. So Dr. Cash could have filed a Texas Whistleblower Act claim in this case. Under the I'm looking at the federal statute 2016 an employee may not be discharged as a reposal and evidence for gross waste of federal funds etc. But here's the Congress speaking not the not the agency and what it's determined to do is to protect the federal funds. It's sort of like a classic whistleblower statute that we have. But as I hear your argument I'm unable to discern exactly what protection is accorded with your argument of immunity. In other words I'm talking about the Congress itself as a condition of giving money to the state. It says that you have to give attempts to give protection to them. Now under your argument of immunity under this statute what do they have? So this for anybody to have a remedy against the under the federal whistleblower statute it needed to have clearly waived immunity. And Congress if they want if they want states to waive their immunity they know how to craft statutory language. You're not ready to answer my question directly. If I understand your argument then this entire program that Congress contemplated was that they don't not going to give you a remedy. And that it's a boy may not be discharged as a replacement. And the reason says employees reasonably believes the evidence of a gross waste of federal funds etc. etc. etc. are a violation etc. Now what protection do they have under the statute? I'm not hearing any. You're saying you pointed well they got other things they might have to go to. But your honor it's a program under your argument that's calculated to protect federal funds to encourage whistleblowing just like they have a false claims act. And what you're saying is this has no tell me what effect it has. So again there are different statutes that a whistleblower could turn to but the NDAA is not one of them for purposes of Texas state entities because of the 11th amendment. And our position is that you're right the NDAA does not apply to the states due to sovereign immunity. If Congress had intended otherwise they could have used the clear statutory language that they use for the IDEA or for the Rehabilitation Act after the Atascadero decision. But it's it's an issue of immunity. Congress if they want to waive or abrogate immunity they have to do it clearly and explicitly. So again going to this procedural issue. The grantees of the federal monies. In this case it was an IDEA grant and it went from the Federal Department of Education to TEA. Well how does any grant money go to a state except to a state agency? Well in this case we're not disputing that it went to a state agency and nor are we disputing that the IDEA contained specific waivers specific to that statute that TEA waived their immunity with respect to the IDEA. They did not waive their immunity to a separate statute. And so if I can ask that if I can answer that question any other way I'd be happy to. Okay thank you. Again we think that the I will very briefly cover again of the other two points but I think if the immunity issue is resolved there's no need to address those points. With respect to the procedural issue there are cases specifically on point the Itape and the Hassovian case which both say if there's actually an impact to the deadline then that deadline can become jurisdictional. In it involved a training grant where if there was no consequence if the agency did not fully complete its investigation within 120 days because here there is in fact a consequence which is that it goes to district court then the agency has lost its its jurisdiction to act after October 6, 2019. Now what I will say is that even the Department of Education believed that that 30-day applied because Secretary DeVos's memo specifically said that it would issue the decision no later than 30 days and in fact the ALJ's notice of hearing on this matter explicitly said a decision in this matter must be issued no later than whoever that 30-day deadline. So they acknowledge that there was a 30-day issue time to act but they calculated on when TEA received the OIG report. If you look at the statute it's very clear the 30-day period begins when the secretary received the report and it's undisputed here that I'm their secretary received the report and all the attachments on September 6, 2019. So therefore that the this agency lost its ability to act and issue damages and even if this court determines that sovereign immunity has been waived the solution is to then remand this case and let the claimant file an action in district court. She still has her statute of limitations to be able to do so that continues I believe until October 2021. Finally with respect to the merits while acknowledging the high burden in terms of showing that there was substantive that it was not supported by substantive evidence we believe that there are several examples of arbitrary and capricious decision-making such as basing the decision on speculation about an attorney-client meeting such as turning basing a decision about whether or not the Commissioner found the allegations credible by an out-of-context use of the word unbelievable. So these are examples of arbitrary and capricious decision-making but I will conclude by your time has expired and you saved time for a vote. Yes. Ms. Lilly. Yes, Your Honor. Janie Lilly for the United States Department of Education. Your Honors we're here because the Texas Education Agency received a billion dollars from the federal government in exchange for its compliance with the whistleblower provisions here. As Judge Smith's questions highlight Texas before the ALJ and its briefing in this court appears to object only to the imposition of a damages award but as of no moment because there is simply no dispute that Texas was a federal grantee to the tune of a billion dollars from the federal government that it accepted those funds and that it participated in the whistleblower protections. The only question here is not to whom the whistleblower provision applies because it clearly applies to Texas but what rather were the words in the NDAA specifically providing for a damages remedy sufficient to put Texas on notice that when it accepted the federal money it was subject to the possibility that it would have to pay damages if it were found to violate those substantive provisions. Your Honor, Texas is contention that the some specific language using condition or waiver or 11th Amendment immunity is required in the NDAA is simply contradicts this court's contrary conclusion in pace. Under this court's case law, there's simply no magic words required to condition federal funds on a waiver of sovereign immunity. And if the court has no questions on that point, I would like to respond to Texas's procedural concerns. Your Honor, Texas has pointed to what it contends were procedural irregularities, specifically with the compliance with the statutory timeline for the agency's decision making. And as we pointed out in our brief, the position that Texas has has staked out makes little sense for the statutory  deadline for agency final decision making was the transmission of the final report to the secretary and to the parties. And that's adequately documented in the record. In any event, even if the court were to conclude that the agency didn't comply with the statutory deadline, that deadline is not jurisdictional. The as the Supreme Court has recognized questions of statutory deadlines and whether they would deprive an agency of jurisdiction in proceedings like this one are a question of congressional intent. And Congress's intent was clear that if the agency couldn't or didn't comply with the statutory deadline, the remedy was then for a whistleblower to proceed in district court. That didn't happen here. And the agency was well within its rights to continue to decide the dispute. Again, assuming that the agency's decision making was untimely. And finally, the Texas's complaint that the agency's decision making was was flawed on either of the two prongs of the whistleblower analysis is incorrect. The agency fully considered the evidentiary record, conducted a full investigation, a live hearing in which the ALJ heard from live witnesses and made credibility assessments and and properly determined that the whistleblower had shown that her whistleblowing activity was a contributing factor within the meaning of the statute and similarly had appropriately concluded that the state agency had not met its burden of showing by clear and convincing evidence that it would have terminated her without the whistleblowing activity. All right. Thank you, Miss Lily. Thank you. If the court has has no further questions. All right. So we'll hear now from Mr. Vernia. You had reserved four minutes. Miss Lily didn't use up nearly all of her time. So let's give Mr. Vernia six minutes. Thank you very much, Your Honor. May it please the court. My name is Ben Vernia. I represent Dr. Laurel Cash, who was the complaining witness in the Department of Education's administrative proceeding below and is the intervener here in this court. I thank Miss Lily for sharing some of her time so that I could address address you. In the short time available, I'm happy to take whatever questions the court has for Dr. Cash's case. I would like to begin, however, by addressing TEA's sovereign immunity argument. And to follow on Judge Higginbotham's question, I would like to draw your attention to the structure and the purpose of the NDA as a whole. The primary purpose of the NDA is to prohibit reprisals against whistleblowers. And that, indeed, is Section 4712's title, Prohibition of Reprisals. The NDA's interests are predominantly federal, not private, and its procedures and remedies rest in the hands of the federal agency. A complaining witness is entitled to a private right of action under 4712C2, but only if the agency declines to pursue the federal government's interests in the matter. TEA has not challenged that it is subject to DOE's jurisdiction under the NDA generally. As one reads the flowchart of the structure of Section 4712, it is clear that Congress intended it to be a tool wielded by federal agencies, and that wielding does not trigger 11th Amendment concerns. Except for receiving the complaint, much like a tip in any law enforcement setting, an entire NDAA case can proceed with little involvement from the whistleblower. The Inspector General investigates and issues its report. The agency head makes a determination and possibly orders remedies. And the agency, not the complainant, would file an action to enforce the agency order under Section 4712C4. As happened here, in most cases contemplated under the NDAA, the complainant is a witness, albeit a potential third-party beneficiary of a finding against the grantee or the contractor. It is only when the federal agency has vindicated all federal interests that the whistleblower has any right to bring what the statute specifically notes as a de novo action in district court. And that's the posture of this case. Dr. Cash is not here as the plaintiff, but as a third-party beneficiary of the DOE's decision and a witness in the case below. TEA's right not to be hailed into court by a citizen is not an issue because DOE, not Dr. Cash, sought to vindicate the government's interest in TEA's compliance with the NDAA. And that is a vital interest. The integrity of the federal government's grants to state agencies is vital to the mission of those programs, and that, in turn, depends on employees knowing that they can speak the truth about waste, fraud, and abuse, as happened here, and not suffer reprisal. I'd like to turn briefly to the merits of J. Layden's decision. But before I do that, I do want to address briefly one issue that Mr. Harris raised, and that is the issue of the deadline. And I would again refer your honors to the statute as a whole. It is clear from the statute that the deadline is, the primary beneficiary of the deadline is the whistleblower, if they choose to bring a further action after they do not get remedies at the agency level. There is essentially nothing, there's essentially nothing to be gained for the grantee or the contractor, whether the deadline is met or not. It is a timing mechanism to ensure that the whistleblower does not basically have to wait forever for the agency to make a decision. The agency is under the gun to make one, but it is clear from the structure of the statute that the deadline was for the benefit of the complaining witness, if they choose to follow on. Turning to the merits of ALJ Layden's decision, it's clear that he reasonably found through prior knowledge of Dr. Cash's protected activity and temporal proximity of her termination, that her whistleblowing was a contributing factor to her termination. And that evidence, in fact, TEA's evidence, in fact, corroborated retaliation. The TXSER email was primarily about the SpedEx contract, which Mr. Morath and TEA knew was suspect. And, in fact, terminated mere weeks after terminating Dr. Cash. TEA simply disagrees with the conclusion that Judge Layden reached as the fact finder, but that's not enough for this court to overturn his findings. And so TEA's arguments are straw men, that Judge Layden disregarded or ignored evidence that Mr. Morath must have been involved in Dr. Cash's termination. The question was not whether he was, but whether others were too. And that the lawsuit naming Dr. Cash as a co-defendant was the only reason the TEA terminated her. ALJ Layden carefully parsed the evidence and rejected their theories. Congress enacted the NDA to prohibit federal grantees and contractors retaliation against whistleblowers because Congress has hard-earned experience with what happens to vital federal programs when witnesses such as her suffer retaliation. Thank you very much, Your Honor. Yes, thank you, Mr. Vernia. Mr. Harris, you save time for rebuttal. Thank you, Your Honor. I'm, of course, open to any questions that your The first is the Fifth Circuit's Hearst case, which applied to a similar argument that was being made as the Department of Education's making here with regard to the vocational rehabilitation program. And in that case, which again, it applied to recipients of federal assistance, this court held that that argument that was being made by the plaintiff was We would say the same thing applies here. Just like in Hearst, the argument that's being made by the respondent is this indistinguishable from the argument that was rejected in Atascadero. The other case I'd like to point to is the McCain case versus school versus a school district. It's a case that cited Williams approvingly, Williams being one of the cases we're depending on, we're citing. The McCain case held, yes, Williams was correct in holding that the NDAA did not waive state sovereign immunity. And by the way, it also did not waive sovereign immunity against the United States. Now, because their federal agencies can contract or be grantees with each other, under the Department of Education's interpretation that grantee applies to literally every possible grantee, that argument would in theory also waive federal sovereign immunity to NDAA whistleblower claims, which again, that case in McCain held it did not. And I will finally conclude by just noting one weird quirk regarding that 30-day deadline. Our argument is that after the 30-day deadline expires, the district court has jurisdiction. But the position that the Department of Education wants, which is that 30-day doesn't necessarily mean anything, it would result in a bizarre situation where there'd be concurrent jurisdiction where the agency could be determining the whistleblower dispute, but a district court could also be determining the whistleblower dispute. The statute actually doesn't allow for that. It says that the agency shall issue the decision no later than 30 days. And that because there's an impact and a consequence to that deadline, it is jurisdictional. And if your honors have no further question, I'll yield the rest of my time. Thank you, Mr. Harris. Your case is under submission.